**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BRANDON ROBERTS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 24-959-BAH |
| KEITH K. ARNOLD, ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Self-represented Plaintiff Brandon Roberts ("Roberts") filed this civil rights complaint, as amended, pursuant to 42 U.S.C. § 1983. ECF 9.[1] Defendants Keith Arnold, William Bohrer, and Richard Roderick (collectively "Defendants") moved to dismiss the complaint or, alternatively, for summary judgment in their favor.[2] ECF 49. Roberts was advised of his opportunity to respond to the dispositive motion and the risks of failing to do so. ECF 50. Roberts did not respond but filed a Request for Discovery pursuant to Rule 56(d).[3] ECF 56. Defendants oppose his request. ECF 57. No hearing is necessary to determine the matters pending. *See* Loc. R. 105.6 (D. Md.

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] Roberts also sues Defendants John and Jane Doe, for whom service has not been accepted. The Doe Defendants will be dismissed without prejudice from all claims save for the two alleging double-celling for 22–23 hours a day as the Court is providing Roberts with an opportunity to supplement those allegations.

[3] Roberts subsequently filed several status reports documenting his difficulties in mailing a memorandum to the Court, presumably in response to Defendants' motion. ECF 58, 59, 60. However, it does not appear he had this same difficulty in filing the status reports. His last update was received on May 29, 2026. To date, and despite noting his intention to file a response over three months ago, ECF 58, the Court has not received a memorandum in opposition from Roberts. As he has been given ample time to do so, the Court will proceed without further extension.

2025). For the reasons stated below, Defendants' motion, construed as a motion to dismiss, will be GRANTED in part and DENIED in part. Roberts will be ordered to supplement the two surviving claims with additional factual detail about his alleged double-celling.

## I. BACKGROUND

In Roberts' verified amended complaint, he alleges that while he was incarcerated at North Branch Correctional Institution ("NBCI") he was subjected to dangerous conditions due to overcrowding and "double[-]bunking." ECF 9, at 3 ¶ 8. He claims that NBCI is receiving federal funding for single cell housing but Arnold and Bohrer are double-celling inmates. *Id.* ¶¶ 9–10. According to Roberts, Defendants placed a top bunk in a cell designed for one person. *Id.* ¶ 11. The cell does not have lockers or locks to protect Roberts' property, and lacks an additional chair, as well as the electric and cable outlets necessary to accommodate an extra prisoner. *Id.* ¶ 13. Defendants also failed to install a ladder or guard rail for the top bunk, which has caused Roberts and others to fall off the bunk. *Id.* ¶ 14. Roberts explains that upon entering the cell, inmates must dodge the edge of the top bunk to avoid serious injury. *Id.* ¶ 15. Defendants lowered the top bunk to avoid having to install ladders, which inhibits Roberts, a bottom bunk designee, from sitting or standing up from his bunk without hitting his head on the top bunk. *Id.* at 3–4 ¶¶ 16–18. He is otherwise forced to lie down or slouch down to be able to sit on his bunk. *Id.* at 4 ¶ 19. Roberts suffers neck and back pain as a result. *Id.*

Roberts also alleges that that the table in his cell is designed for only one person. ECF 9, at 4 ¶ 20. Arnold and Bohrer attempted to accommodate the second occupant by installing a shelf with clothing hooks. *Id.* Roberts complains that the shelf does not serve the same purpose as a table and because of its location next to electrical outlets creates a fire hazard. *Id.* He asserts that this inhibits his ability to participate in his ongoing litigation because he has to choose between

researching and writing or disturbing his cell mate. *Id.* ¶¶ 21–22. Additionally, Roberts asserts that Buildings 1 through 4 are very poorly ventilated and dirty, all of which are managed by Defendants John and Jane Doe. *Id.* ¶ 23. During the warmer months, Defendants only direct air conditioning to the areas where correctional and medical staff are stationed. *Id.* ¶ 24. This leaves Roberts with only a fan to circulate the hot air and forces him to lie directly under the fan until he can exit the cell to shower. *Id.* ¶ 25. The heat also causes the ice machines to slow and inmates are only provided two small scoops of ice per day. *Id.* ¶ 26.

Roberts further alleges that Defendants have made "a draconian rec schedule for the general population" resulting in lock-down every day for 22 to 23 hours. ECF 9, at 5 ¶ 27. He alleges that Defendants blame a lack of staff but never make up for missed recreation time. *Id.* Roberts also alleges that Defendants arbitrarily cancel outdoor recreation on hot days and do not offer indoor recreation as an alternative. *Id.* ¶ 28. Roberts contends that Defendants are creating "completely ridiculous fictitious holidays" like Officer Appreciation and Staff Reduction Days as an excuse to lock down the prison for a whole day. *Id.* ¶ 29.

Roberts also complains that Defendants Roderick and John and Jane Doe fail to competently house compatible individuals together. ECF 9, at 5 ¶ 30. Roberts contends that they do not consult the inmates through this process, nor do they consider whether inmates are enemies. *Id.* ¶ 31. Roberts asserts that their inattention in housing decisions and failure to make rounds regularly allows for numerous stabbings, killings, rapes, assaults, and robberies, many of which go unreported. *Id.* ¶¶ 32–34. When Defendants do catch inmates fighting, they sometimes send the inmates to disciplinary segregation before they can pack up their belongings, instead allowing other inmates to pack up their belongings, which results in thefts. *Id.* ¶¶ 35–36. Roberts also complains about the chemical agents disbursed during these kinds of altercations, which

Defendants then "maliciously" fail to clear by neglecting to open the doors and run fans. *Id.* at 6 ¶¶ 38, 40. This has exacerbated Roberts' breathing issues to the point of needing a nebulizer. *Id.* ¶ 41.

According to Roberts, there are single cells available at NBCI but Arnold and Bohrer use them to manipulate inmates into work. ECF 9, at 6 ¶ 42. In Spring 2023, they began "singling" the cells after a wave of stabbings and deaths but Roberts asserts that while they claimed to be finished in early 2024, there are still four housing units that remain double-celled. *Id.* at 6–7 ¶¶ 43–48. Roberts also alleges that Arnold and Bohrer stopped "singling" cells in early 2023—apparently very soon after they started. *Id.* at 7 ¶¶ 50–51. Roberts also alleges that Defendants are refusing to release or classify prisoners to lower security in order to obtain more public funding. *Id.* ¶ 52. Defendants are also housing inmates serving less than one year as well as pretrial detainees. *Id.* ¶¶ 53–54. Roberts avers that he is currently double-bunked indefinitely, where he is subjected to second-hand smoke, potential violence, and is "deprived of adequate exercise." *Id.* ¶¶ 56–59.

Roberts brings § 1983 claims for violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights against Defendants in their individual and official capacities. ECF 9, at 8–14. Roberts seeks declaratory, injunctive, and monetary relief. *Id.* at 13–14.

Defendants assert that Roberts exhausted only one administrative remedy procedure ("ARP") related to the allegations in the amended complaint. ECF 49-1, at 9–12. On May 11, 2023, Roberts filed ARP No. NBCI-0599-23 challenging the practice of double-bunking at NBCI. ECF 49-3 at 3 ¶ 4 (Bradley declaration); *see also id.* at 6–7 (request for administrative remedy signed May 11, 2023). Arnold dismissed the ARP, explaining that the cell at NBCI complied with the 2016 Adult Correctional Institution ("ACI") supplemental manual which states "cell/rooms used for housing inmates shall provide a minimum of 25 square feet of unencumbered space per

occupant." *Id.* at 6, 9. Arnold stated that 52.9 square feet are provided in a double occupancy cell, exceeding the ACI Manual standard. *Id.* Roberts appealed to the Commissioner of Correction, who dismissed Roberts' claim on the same basis. ECF 49-4, at 10–12. Roberts' appeal to the Inmate Grievance Office ("IGO"), No. 20230920, was dismissed on October 18, 2023. *Id.* at 4, 18–19. Roberts was transferred from NBCI to Western Correctional Institution on November 7, 2024. ECF 49-3, at 4.

## II. STANDARD OF REVIEW

Defendants argue that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Federal Rule of Civil Procedure 56. *See* ECF 49-1, at 1. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur as the Court "does not have an obligation to notify parties of the obvious." *Id.* at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants styled their motion as a motion to dismiss or, in the alternative, for summary judgment, Roberts was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. Roberts filed a request for discovery pursuant to Rule 56(d) stating that he needed to obtain relevant documents to properly respond to Defendants' motion. ECF 56, at 1. In his supporting affidavit, Roberts states that the evidence he needs, which is in Defendants' possession includes: records of the individuals killed, raped, or assaulted in double-bunked cells since 2009; records of fall injuries occurring while an inmate moved on or off of the top bunk; policies pertaining to provision of lockers for double-bunked inmates; record of the total number of single cells available in each unit and how many inmates are currently in single cells; all reports concerning the ventilations system including inspections, regulations, and policies; and records of the total hours inmates spent confined from 2020 to present including, at minimum, each month's recreation schedule. *Id.* at 1–2.

Defendants oppose the request and argue that Roberts fails to identify how the requested discovery would create a genuine issue of material fact, contending that Roberts only advances the conclusory argument that the requested documents are "essential." ECF 57, at 1, 3–4. Moreover, Defendants assert that their motion rests on legal grounds such as their entitlement to immunity, failure to exhaust administrative remedies, and failure to state a claim for relief. *Id.* at 5. The Court agrees that Defendants' legal arguments can be addressed without consideration of whether summary judgment is premature. Therefore, the Court will return to Roberts' argument only if his claims survive Rule 12(b)(6) review.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for

the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Roberts is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Defendants argue that that the amended complaint should be dismissed or summary judgment should be entered in their favor because Roberts lacks standing to pursue non-individualized claims, they are entitled to immunity in their official capacities, Roberts failed to

exhaust his administrative remedies, Roberts fails to state a conditions of confinement or denial of medical care claim, Roberts' property claims are not viable constitutional claims, Roberts' due process claims lack merit, Roberts fails to state a First Amendment claim, Roberts fails to sufficiently allege Defendants' personal participation, Roberts' requests for injunctive and declaratory relief are moot, and Defendants are entitled to qualified immunity. *See generally* ECF 49-1.

**A. Exhaustion of Administrative Remedies**

Defendants argue that all of Roberts' claims except those related to double-bunking should be dismissed because he failed to exhaust the available administrative remedies prior to filing his complaint. ECF 49-1, at 9. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"). Consequently, if Roberts has not properly presented his

claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any Division of Corrections official or employee. Md. Code Ann., Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has a grievance procedure that is approved by the

IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[4] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR

[4] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–08. The procedure of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge ("ALJ") denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see also*

*Moore*, 517 F.3d at 725 (explaining that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). The exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *see also Gibbs v. Bureau of Prison Off.*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level").

The record shows that in the three years prior to initiating this suit, Roberts only exhausted one ARP related to the allegations in his amended complaint, ARP No. NBCI-0599-23, which Defendants contend was filed on May 11, 2023, and "complained about housing two occupants in a single cell." ECF 49-3, at 3. Defendants provide a copy of the ARP, in which Roberts complained that he was improperly double-celled because the cell was not large enough for two people, he was not provided sufficient furniture and usable space, and he was subject to lock-down for too many hours a day in a cell that was too small to accommodate multiple occupants. *Id.* at 6–7.[5] Roberts did not file any ARPs regarding his various incidental claims about ventilation, recreation, property, obstacles to his ability to litigate, or housing assignment procedures and

[5] This ARP (NBCI-599-23) was purportedly investigated but dismissed because "[t]he current schematics of the cell provide 26.45 square feet per person in the cell, which is within the [relevant] standards." ECF 49-4, at 10. Defendants concede that Roberts has exhausted this grievance. ECF 49-1, at 5.

practices. As such, he failed to exhaust the available administrative remedies as to these claims and they will be dismissed without prejudice.[6] The Court will turn to whether Roberts has stated adequate claims under the Eighth or Fourteenth Amendment as it relates to his exhausted double-bunking allegations.

### B. Standing

First, the Court acknowledges that in addition to Roberts' allegations concerning the harm he has suffered in relation to double-bunking at NBCI, he also makes numerous generalized claims about how the challenged practices affect the prison population *as a whole*. *See generally* ECF 9. To state a civil rights claim, a prisoner must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by Constitution or federal law. *See Inmates v. Owens*, 561 F.2d 560, 563 (4th Cir. 1977). To demonstrate standing, a "[p]laintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *See Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Roberts simply has no standing to assert the rights of other inmates who may have suffered harm as the result of a constitutional violation. Accordingly, to the extent Roberts seeks to assert claims based on the alleged injuries of the general NBCI prison population resulting from the challenged double-celling policy, the generalized portion of those claims must be dismissed.

[6] While Defendants have moved for summary judgment, and the Court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).

**C. Double Occupancy Cells**

Roberts raises Eighth and Fourteenth Amendment claims alleging that the conditions at NBCI are unconstitutional and violate his right to due process. ECF 9, at 10. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

The objective prong of a conditions claim requires proof of an injury. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof or risk of "a serious or significant physical or emotional injury resulting from the challenged conditions." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). To establish a sufficiently culpable state of mind, a plaintiff must allege that the defendant disregarded a known excessive risk of harm to the inmate's health or safety. *See Wilson*, 501 U.S. at 298–99. In other words, "the test is whether the guards know the plaintiff inmate faces

a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N. Carolina Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Defendants argue that Roberts does not allege that he sustained any specific injury from conditions he challenges. ECF 49-1, at 13. The Court disagrees. Roberts states that he suffered neck and back pain due to the limited space between his bottom bunk and the top bunk for him to sit. ECF 9, at 4 ¶ 19. Roberts also explains that due to the organization of the cells to accommodate two people, he is at risk of injuring himself on the edge of the top bunk which protrudes into the cell's entryway. *Id.* at 3 ¶ 15. Despite stating he has a bottom bunk, Roberts also claims to have fallen off the top bunk because no ladder is available. *Id.* ¶ 14. Still, these allegations are insufficient to demonstrate that he suffered a serious deprivation of a basic human need. "[T]he constitutional prohibition against the infliction of cruel and unusual punishment 'does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Shakka*, 71 F.3d at 166 (quoting *Wilson*, 501 U.S. at 298 (citations and internal quotation marks omitted)). Roberts' discomfort sitting on his bunk or his need to take care while entering his cell, while unpleasant and uncomfortable, are not sufficiently serious deprivations to constitute constitutional violations. Further, though Roberts asserts that he fell off the top bunk, he does not state what, if any, injury he suffered as a result. Thus, even assuming this serves to demonstrate a risk of harm, Roberts fails to plead facts making the severity of that risk anything more than speculative as it relates to this aspect of this claim. These allegations fail to establish an Eighth Amendment claim.

However, the Court views Roberts' allegation related to double-celling differently. Specifically, Roberts alleges that Arnold, Bohrer, and the Doe Defendants keep him confined to his tight cell for "22–23 hours daily." ECF 9, at 5 ¶ 5. To borrow from Judge Hollander, "[v]iewed in the light most favorable to [Roberts], the facts could show that [his] complaints regarding double celling showed a pervasive and unreasonable risk of injury and [Defendants] failed to take any action, which a fact finder could conclude demonstrated either deliberate indifference or tacit authorization of [Roberts'] treatment at NBCI." *Pevia v. Moyer*, Civ. No. ELH-20-3270, 2022 WL 5054124, at *6 (D. Md. Oct. 3, 2022). Moreover, "there is clearly established law regarding the conditions of confinement of inmates housed in double cells for prolonged periods of time, which can constitute a violation of the Eighth Amendment." *Pevia v. Moyer*, Civ. No. ELH-20-3270, 2023 WL 3740562, at *8 (D. Md. May 30, 2023). As such, the Court will not dismiss the claim against Arnold and Bohrer alleging that Roberts was unlawfully confined to his cell for 22–23 hours a day.

However, the amended complaint is sparse on critical details related to this claim. For example, the amended complaint does not provide details as to when the alleged 22–23 hour daily "lock-down" was implemented, whether it continues to the present or, if not, when it ended. Given that the viability of a "double-celling" claim hinges, in part, on whether that practice extended for a "prolonged" duration, *Pevia*, 2023 WL 3740562, at *8, this information must be provided in order for the complaint to comport with Federal Rule of Civil Procedure 8(a).[7] Though the Court

---

[7] That rule requires that a civil complaint contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

will not dismiss the claim outright, Roberts is hereby ordered to supplement his complaint with additional factual allegations related to this claim as noted in this paragraph and, *infra* at footnote 8, within 30 days of the entry of this order.[8]

As to Roberts' Fourteenth Amendment claim, Defendants argue that Roberts' allegations do not implicate a protected liberty interest. ECF 49-1, at 16. "In the prison context, there are two different types of constitutionally protected liberty interests that may be created by government action." *Mills v. Bishop*, Civ. No. LKG-22-1512, 2024 WL 185351, at *16 (D. Md. Jan. 17, 2024). "The first occurs when there is a state-created entitlement to an early release from incarceration," which is not at issue in this case. *Id.* (citations omitted). "The second type of liberty interest is created by the imposition of an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). As the Fourth Circuit has noted, "[t]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact specific" comparative

(3) a demand for the relief sought.

Fed. R. Civ. P. 8(a).

[8] The Court could order the filing of an amended complaint and is aware that "[a] supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (citing Fed. R. Civ. P. 15(d)). However, given that the continuation of the alleged lock-down would constitute events occurring subsequent to the filing of the amended complaint, the Court finds that this is the proper vehicle with which to add additional details related to these claims. As noted, the remaining Defendants can respond to this supplement with an answer or a renewed motion to dismiss and/or for summary judgment.

exercise. *Beverati v. Smith*, 120 F.3d 500, 502–03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483–84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). The Supreme Court's decision in *Wilkinson v. Austin*, 545 U.S. 209 (2005) "does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . harsh and atypical conditions" for Due Process protections to apply. *Id.* (emphasis in original) (citing *Wilkinson*, 545 U.S. at 224–25).

Importantly, inmates do not have a constitutional right to demand housing in a particular cell absent a showing of significant hardship. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."). Plus, as demonstrated by Roberts' own pleadings, his assignment to a double cell may not be atypical to the rest of the general population at NBCI. However, as discussed above in relation to his Eighth Amendment claim based on the same facts, Roberts' assertion that he is confined to a double cell for 22–23 hours a day adequately alleges that he is suffering a severe deprivation of a liberty

interest. As such, Roberts' Fourteenth Amendment claim will also survive as to this allegation, but is subject to the order to supplement addressed above.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion, ECF 49, is **GRANTED** in part and **DENIED** in part. Roberts' double-bunking claims are dismissed for failure to state a claim. His two claims related to being confined to his cell with a cellmate for 22–23 hours a day survive, but Roberts is **ORDERED** to supplement those claims with the additional information requested by the Court within 30 days. Failure to provide this supplement may result in dismissal of Roberts' remaining claims. An answer or responsive pleading to the supplement is due within 21 days of its filing. All other claims are dismissed without prejudice for failure to exhaust administrative remedies.

A separate implementing Order will issue.

Dated: September 22, 2026

/s/
Brendan A. Hurson
United States District Judge

---

[9] Roberts alleges that Arnold, Bohrer, and the Doe defendants "constructed" the circumstances that resulted in the near 24-hour lock-down he complains of. ECF 9, at 5 ¶ 27. Thus, for purposes of evaluating the motion to dismiss, the Court views the allegations as claiming that Arnold, Bohrer, and the Doe defendants were personally involved in the decisions at issue but requests that Roberts provide more details about each individual's alleged involvement in his supplemental pleading. Therefore, Defendants' arguments addressing "supervisory liability" do not apply at this time. ECF 49-1, at 18–19. Further, the Court finds that the qualified-immunity analysis turns on alleged factual disputes, thus dismissal on qualified-immunity grounds is inappropriate at this stage. *See Miles v. Bollinger*, 979 F.2d 848 (4th Cir. 1992) (noting that ruling on qualified immunity is inappropriate at early stage of proceedings where the defense "turns on an interpretation of facts which are in dispute").